Appeal No. 2024-1015

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**IN RE JAROM MCDONALD, THERON BRENT HARMON, JEFFREY HARMON, NEAL HARMON, VIDANGEL, INC., ANGEL STUDIOS, INC.,**

*Appellants.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board No. 2022-001856, Application Serial No. 15/454,677.

# BRIEF FOR APPELLEE—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

FARHEENA Y. RASHEED
Acting Solicitor

AMY J. NELSON
Acting Deputy Solicitor

ROBERT E. MCBRIDE
KAKOLI CAPRIHAN
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035
*Attorneys for the Director of the U.S. Patent and Trademark Office*

April 2, 2024

## **Exemplary Claims 21, 24, 26, and 28-29**

21. A computer-implemented method, comprising:

[1] providing media content to a consumer computer device;

[2] presenting a tipping interface, related to the media content, to the consumer computer device; and

[3] receiving tipping input from the consumer computer device, through the tipping interface, wherein the tipping input includes information associated with a tip;

> wherein:
>
> [4] the tipping interface is a computer-based interface; and
>
> [5a] the media content includes closing credits and the tipping interface is presented at the beginning of or during the closing credits; or
>
> [5b] the tipping interface is presented at one or more trigger points during the media content.

24. A computer-implemented method, comprising:

providing media content to a consumer computer device;

presenting a tipping interface, related to the media content, to the consumer computer device; and

receiving tipping input from the consumer computer device, through the tipping interface, wherein the tipping input includes information associated with a tip; and

> wherein:
>
> the tipping interface is a computer-based interface; and
>
> the tipping interface includes elicitation content; the tipping interface includes an upsell interface; or the tipping interface includes an indication that a tip will be used for at least one of the following: financing a sequel for the media content, improving streaming for the media content, improving filtering for the media content, improving distribution of the media content, and improving affordability of the media content.

26. The method of claim 25, wherein the elicitation content comprises a message from an actor, producer, director, or developer of the media content.

28. The method of claim 24, wherein the tipping interface includes an indication that a tip will be used for at least one of the following: financing a sequel for the media content, improving streaming for the media content, improving filtering for the media content, improving distribution of the media content, and improving affordability of the media content.

29. A computer-implemented method, comprising:

providing media content to a consumer computer device;

presenting a tipping interface, related to the media content, to the consumer computer device; and

receiving tipping input from the consumer computer device, through the tipping interface, wherein the tipping input includes information associated with a tip; and

> wherein:
>
> the tipping interface is a computer-based interface; and
>
> > the tipping interface includes tipping estimate information and the tipping estimate information is based at least in part on at least one item from the following list: tipping data for another consumer of the media content; and tipping data for another consumer that shares at least one common characteristic with the consumer; or
> >
> > presenting the tipping interface comprises determining characteristics of the tipping interface based on historical tipping results.

Appx2-3; Appx31-33 (bracketed numbering added).

# TABLE OF CONTENTS

**Page**


I. Statement of the Issues ........ 1

II. Statement of the Case ........ 4

A. The claimed invention in McDonald's application: using a computer-based tipping interface to facilitate tips for media content viewed on a consumer computer device ........ 5

B. The prior art ........ 11

1. Lim: computer-implemented methods of facilitating, providing, and receiving tips for media content viewed on a consumer computer device using a computer-based tipping interface ........ 11

2. Van Vleck: presenting an interactive display during closing credits that allows a user to purchase recently viewed media content ........ 17

3. Twist: a tipping interface that includes a message and video from a charitable organization soliciting a charitable contribution ........ 19

4. Ignacio: a tipping interface that presents customers with monetary and non-monetary rewards in order to encourage customers to compensate hospitality workers well ........ 21

5. Mowry: computer-implemented methods that allow a user to fund a future feature film ........ 24

6. Carlson: providing a consumer with an alert or message that provides a suitable tip for a transaction based on prior transactions engaged in by the consumer or other suitable consumers ........ 24

C. The Board's Decision ....................25

1. The Board affirmed the examiner's rejections of claims 21-32 as patent ineligible under § 101 ....................26

a) *Alice* Step 1: the Board finds claim 21 is directed to the abstract idea of managing tip payments ....................26

b) *Alice* Step 2: the Board finds that the additional claim elements do not provide significantly more than the recited judicial exception ....................28

2. The Board affirmed the examiner's rejection of claims 21-32 as obvious in view of the prior art ....................31

a) The Board found claims 21-23 obvious based on Lim and Van Vleck ....................31

b) The Board found claims 24-27 obvious based on Lim, Twist, and Ignacio ....................33

c) The Board found dependent claim 28 obvious based on Lim, Twist, Ignacio, and Mowry ....................36

d) The Board found claims 29-32 obvious based on Lim and Carlson ....................37

III. Summary of the Argument ....................38

IV. Argument ....................43

A. Standard of review ....................43

B. The Board correctly determined that claims 21-32 are patent ineligible under § 101 ....................45

1. Claim 21 is directed to the abstract idea of managing commercial tipping payments ....................46

2. The additional claim elements do not transform the abstract idea into a patent eligible application ............48

3. McDonald's arguments that the claims are patent eligible are unpersuasive ..................................................48

C. Substantial evidence supports the Board's findings that claims 21-32 would have been obvious over the combined teachings of the prior art...........................................................51

1. Independent claim 21 would have been obvious in view of Lim and Van Vleck...............................................51

2. Independent claim 24 would have been obvious based on Lim, Twist, and Ignacio ....................................57

a) It would have been obvious to combine Twist's elicitation content with Lim....................................57

b) It would have been obvious to combine Ignacio's upsell interface with Lim ........................61

3. Dependent claim 26 would have been obvious based on Lim, Twist, and Ignacio ................................................65

4. Dependent claim 28 would have been obvious based on Lim, Twist, Ignacio, and Mowry.................................67

5. Independent claim 29 would have been obvious based on Lim and Carlson .................................................68

V. Conclusion ..........................................................................................70

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ....................31

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014) .................... *passim*

*In re Am. Acad. of Sci. Tech. Ctr.*,
367 F.3d 1359 (Fed. Cir. 2004) ....................59

*In re Beattie*,
974 F.2d 1309 (Fed. Cir. 1992) ....................56

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ....................43

*In re Bigio*,
381 F.3d 1320 (Fed. Cir. 2004) ....................64

*Bilski v. Kappos*,
561 U.S. 593 (2010) ....................46, 47

*Consolidated Edison Co. v. NLRB*,
305 U.S. 197 (1938) ....................44

*In re Couvaras*,
70 F.4th 1374 (Fed. Cir. 2023)....................53, 63, 66

*Credit Acceptance Corp. v. Westlake Services*,
859 F.3d 1044 (Fed. Cir. 2017) ....................46, 47

*Elec. Power Grp. LLC v. Alstom SA.*,
830 F.3d 1350 (Fed. Cir. 2016) ....................29

*Elekta Limited v. ZAP Surgical Systems, Inc.*,
81 F.4th 1368 (2023).................... 54, 55, 61, 62

*In re Fulton*,
391 F.3d 1195 (Fed. Cir. 2004) ....................................................................56

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ....................................................................44

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ............................................. 53, 63, 66, 69

*Graham v. John Deere Co.*,
383 U.S. 1 (1966) ..........................................................................................44

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) ....................................................................43

*Inventor Holdings. LLC v. Bed Bath & Beyond, Inc.*,
876 F.3d 1372 (Fed. Cir. 2017) ....................................................................29

*In re Jolley*,
308 F.3d 1317 (Fed. Cir. 2002) ....................................................................44

*In re Jung*,
637 F.3d 1356 (Fed. Cir. 2011) ....................................................................43

*In re Katz Interactive Call Processing Patent Litig.*,
639 F .3d 1303 (Fed. Cir. 2011) ..................................................................29

*In re Kotzab*,
217 F.3d 1365 (Fed. Cir. 2000) ....................................................................44

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) ..............................................................................61, 62

*Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*,
923 F.3d 1051 (Fed. Cir. 2019) ....................................................................56

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ....................................................................47

*Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*,
73 F.3d 1085 (Fed. Cir. 1995) ......................................................................44

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................................................................59

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
873 F.3d 1364 (Fed. Cir. 2017) ..............................................................46, 47

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....................................................................63

*In re Sullivan*,
362 F.3d 1324 (Fed. Cir. 2004) ....................................................................43

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016) ..............................................................30, 49

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ....................................................................29

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ......................................................................29

*United States v. Dunkel*,
927 F.2d 955 (7th Cir. 1991) .......................................................................63

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
916 F.3d 1363 (Fed. Cir. 2019) ....................................................................31

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) ...........................................................*passim*

**Statutes**

5 U.S.C. § 706(2)(A) ....................................................................................43

5 U.S.C. § 706(2)(E) ....................................................................................44

35 U.S.C. § 101 ......................................................................................*passim*

35 U.S.C. § 103 ......................................................................................*passim*

**Other Authorities**

MPEP § 2106 ..................................................................................................26

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal in connection with this application that has previously been before this or any other court, or of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## I. Statement of the Issues

McDonald's claims 21-32 recite a computer-implemented method of using a tipping interface to elicit, facilitate, provide, and receive tips when a consumer views media content on a computer. Claims 21-23 require that the tipping interface be presented during the closing credits of the media content or at trigger points during the media content. Claims 24-27 require that the tipping interface include elicitation content, an upsell interface, or an indication of what the tip will be used for (e.g., financing a sequel for the media content). Claims 29-32 require that the tipping interface provide tipping estimate information based on tipping data for another consumer or historical tipping results.

The Board affirmed the examiner's rejection of all of the pending claims (claims 21-32) on two separate grounds. *First*, focusing on representative claim 21, the Board determined that the claims are patent ineligible under 35 U.S.C. § 101. Under the two-step framework set forth in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), the Board determined that (1) the claim is directed to the abstract idea of managing commercial tipping payments which is a method of

organizing human activity, and (2) that the additional claim limitations, which merely require a generic computer to perform generic computer functions, do not transform the abstract idea into patent eligible subject matter.

*Second*, the Board determined that claims 21-32 would have been obvious over the prior art: claims 21-23 over Lim and Van Vleck; claims 24-27 over Lim, Twist and Ignacio; claim 28 over Lim, Twist, Ignacio, and Mowry; and claims 39-32 over Lim and Carlson. Lim teaches providing media content providers with a means to receive payments for goods and services they offer through a tipping (gratuity) scheme where a user views content and then provides a tip by selecting a tipping icon or link, and then designating the appropriate gratuity. Van Vleck teaches an interactive display module that allows a user to subscribe or purchase recently viewed media content, and further teaches displaying the interactive module during the opening or closing credits. Twist teaches customizing an electronic communication within a social networking system that indicates to the recipient a desire to solicit contributions to a charitable organization. Ignacio describes presenting a customer with rewards (e.g., points) for specifying a generous gratuity

level (e.g., 22%) in order to encourage customers to provide generous tips. Mowry describes providing incentives to a user that include subsequent or additional media (e.g., a feature film sequel) after an initial or related network-based interaction occurs between the user and a site. Carlson teaches providing a consumer with an alert or message that can be used to determine a suitable tip or gratuity for the transaction.

The Board found that each of the claim limitations is disclosed in the prior art. The Board also found that a person of ordinary skill in the art would have been motivated to combine the prior art as follows: a) combining Lim and Van Vleck to provide an interactive display that does not interrupt the media content being delivered to the user, as recited in claims 21-23, b) combining Lim, Twist, and Ignacio to provide an integrated online donation option that maximizes donations, as recited in claims 24-27; c) combining Lim, Twist, Ignacio, and Mowry to allow for incentive-based exchange, such as improvements and financing, for project contribution, as recited in claim 28; and d) combining Lim and Carlson to provide an alert that includes a suggested amount for a tip, as recited in claims 29-32.

Thus, the two issues on appeal are:

(1) whether the Board correctly determined that claims 21-32 are patent ineligible; and

(2) whether substantial evidence supports the Board's findings that claims 21-32 would have been obvious over the various combinations of prior art.

This Court should answer both of these issues in the affirmative and affirm the Board's decision. If the Court affirms the Board's determination that the claims are patent ineligible, it need not reach the obviousness grounds.

## II. STATEMENT OF THE CASE

This appeal arises from the USPTO's examination and rejection of all pending claims (claims 21-32) of U.S. Patent Application No. 15/454,677 ("the '677 application"), titled "Tipping for Media Content." Appx41-70 ('677 specification); Appx31-34 (claims on appeal); Appx243-279 (Non-Final Office Action that is the subject of this appeal); Appx333-345 (Examiner's Answer).[1]

[1] Citations to "Appx__" refer to the Joint Appendix, and citations to "Br. at __" refer to appellant's opening brief.

The examiner rejected all of the pending claims as patent ineligible under 35 U.S.C. § 101 and as obvious over the prior art under 35 U.S.C. § 103. Appx245-274. As to the obviousness determination, the examiner rejected claims 21-23 as obvious over Lim in view of Van Vleck (Appx256-261), claims 24-27 as obvious over Lim in view of Twist and Ignacio (Appx262-267), claim 28 as obvious over Lim in view of Twist, Ignacio, and Mowry (Appx267-268), and claims 29-32 as obvious over Lim in view of Carlson (Appx268-274). The Board affirmed the examiner's rejections. Appx1-25. McDonald now appeals.

### A. The claimed invention in McDonald's application: using a computer-based tipping interface to facilitate tips for media content viewed on a consumer computer device

McDonald's '677 application relates to computer-implemented methods of eliciting, facilitating, providing, and receiving tips for media content viewed on a consumer computer device using a computer-based tipping interface. Appx41, ¶ 1; Appx43, ¶¶ 10-14.

As background, the '677 application states that the notion of tipping is entrenched in some industries and settings, e.g., food service, hotels, taxi cabs, and coffee shops, where the individuals providing the services are physically present. Appx41, ¶¶ 2-5. In addition to such

physical services, the ’677 application recognizes that patrons may desire to provide a tip when consuming media content, e.g., streaming a movie, where the individuals responsible for providing the content are generally not physically accessible at the point of consumption. Appx41, ¶ 5. The ’677 application teaches that the desire to provide a tip for these digital services may result from a feeling of gratitude or moral obligation, or some other motivation, such as the quality of the content, user interface, and/or filtering options. Appx41-42, ¶¶ 5-6. The ’677 application teaches that, because the service provider of such digital services is not physically present to elicit and/or receive tips from the consumer of the media content, there is a need for a solution for eliciting and receiving tips in the context of media consumption, e.g., in the context of streaming a movie. Appx42, ¶ 7.

To address this need, the ’677 application describes computer-implemented methods and systems for eliciting and receiving a tip for media content, such as a movie or television show, that is streamed to a consumer’s device, such as a computer, television, smartphone, or tablet. Appx42, ¶¶ 8-9. Specifically, the methods provide media content and a tipping interface to a consumer computer device where the

tipping interface can receive tipping input from the consumer computer device. Appx43, ¶ 10; Appx47, ¶¶ 35-36. The tipping interface may be presented at certain times during the media content, such as at the beginning, during the closing credits, or at one or more trigger points during the media content. Appx43, ¶ 10; Appx47-48, ¶ 37. The tipping interface may include elicitation content, an upsell interface, or an indication that a tip will be used for a particular purpose, such as financing a sequel or improving media content streaming, filtering, distribution, and/or affordability. Appx43, ¶¶ 11-12; Appx48-50, ¶¶ 39-41; Appx54-55, ¶¶ 56-60. The tipping interface may also include tipping estimate information that is based at least in part on tipping data for another consumer of the media content, tipping data for another consumer that shares at least one common characteristic with the consumer, or historical tipping results. Appx43, ¶ 13; Appx50, ¶42.

The ’677 application teaches that the tipping interface may be any web, HTML, smartphone, browser, application, app, or other interface known in the art. Appx47, ¶ 35. Figure 1C depicts an exemplary tipping interface 185:




FIG. 1C

Appx47, ¶ 36; Appx67. Buttons 186, 187, 188, 189, and 190 provide options for a user or consumer to tip in the amount of $1, $2, $5, $10, or a custom amount, respectively. Appx47, ¶ 36.

Figure 3 depicts a flow chart 300 for an exemplary process for eliciting and receiving tips in conjunction with providing media content:




**FIG. 3**

Appx57, ¶ 66; Appx69. At step 310 a media content provider may stream a movie to a consumer device. Appx57, ¶ 67. At step 320 the streaming service identifies or receives a trigger for a tipping interface. Appx58, ¶ 71. At step 330 the streaming system may transmit a tipping interface to the consumer's device. Appx59, ¶ 73. At step 340 the streaming system may receive tipping input from the consumer's device.

Appx59, ¶ 75. At step 350 the streaming system may effect a financial transaction associated with the received tipping input. Appx59-60, ¶ 76.

Independent claim 21 of the ’677 application is exemplary of the claimed subject matter at issue in this appeal:

21. A computer-implemented method, comprising:

[1] providing media content to a consumer computer device;

[2] presenting a tipping interface, related to the media content, to the consumer computer device; and

[3] receiving tipping input from the consumer computer device, through the tipping interface, wherein the tipping input includes information associated with a tip;

> wherein:
>
> [4] the tipping interface is a computer-based interface; and
>
> [5a] the media content includes closing credits and the tipping interface is presented at the beginning of or during the closing credits; or
>
> [5b] the tipping interface is presented at one or more trigger points during the media content.

Appx2-3; Appx31 (bracketed numbering added).

### B. The prior art

#### 1. Lim: computer-implemented methods of facilitating, providing, and receiving tips for media content viewed on a consumer computer device using a computer-based tipping interface

Lim[2] describes internet search engines that allow users to receive individually generated search results based on user profiles and key words. Appx426, ¶ 2. Lim describes compensating content providers for goods and services they offer with either a "pay-per-view" fee or a tipping (gratuity) scheme. Appx430, ¶ 62. For example, Lim teaches that a content provider associated with a content source might offer access to a scientific journal hosted at that content source for $0.50/article (or some other pay-per-use fee). *Id.* Alternatively, Lim teaches that the content provider might provide a hyperlink to a website that allows users to provide a gratuity in order to express their appreciation for the content provided. *Id.*

Lim describes a gratuity collection process that allows users to pay voluntarily without obstructing access to the content. Appx439, ¶ 184. Payment options for such tips can be customized as open, default

[2] U.S. Patent Application Publication No. US 2018/0374121 (published December 27, 2018). Appx394-442.

suggested, check box selection, radio button selection, slide bar selection or fixed value options. *Id*. Lim states that this allows for great flexibility in incorporating the tip-payment feature into the content provider's website. *Id*.

According to Lim, webpage-based tipping allows for voluntary payments, which can be used when a content provider wants to collect fees without erecting entry barriers for users. Appx439, ¶ 188. Lim teaches that, in such a tipping scheme, a user views content including a tip icon, a tip form, tip link, or some other means to be directed to a payment site. *Id*. To provide a tip, Lim teaches that the user simply selects the icon or link, and designates the appropriate gratuity at the site to which he/she is then directed. *Id*.

Lim Figure 11A (depicted below) illustrates a process by which users may leave gratuities for content providers:



Fig. 11A

Appx414; Appx427, ¶ 31. In accordance with the process shown in the diagram, Lim discloses that process 1100 begins with the user receiving an invitation to visit a content site (step 1102), for example via e-mail or while web surfing. Appx439-440, ¶ 189. Lim teaches that, after visiting the site, the user may decide whether he/she enjoyed the visit (step 1104). *Id.* If not, the user continues surfing in the conventional fashion

(step 1106). *Id.* If the user enjoyed the visit to the web site and wants to express his/her appreciation to the content provider, the user can select a link to a gratuity site if one is provided (steps 1108 and 1110). *Id.*

Lim Figure 11B (depicted below) illustrates a continuation of the process by which users may leave gratuities for content providers:



Fig. 11B

Appx415. After selecting the link for the gratuity site, Lim teaches that the user is directed to the site at which he/she can leave a gratuity (step 1122). Appx440, ¶190. While at the site, different procedures may be followed depending on whether the site is a set gratuity or variable gratuity site (step 1124). *Id.* For variable gratuity sites, the user is provided with the opportunity to indicate the amount of the tip to be provided (step 1126). *Id.* In either case, the user enters the tip amount and may then provide comments (step 1128) to be provided to the content site provider. *Id.*

Lim Figure 12 (depicted below) illustrates examples of tipping interface features that may be associated with gratuity sites:




Fig. 12

Appx416; Appx427, ¶ 32. Lim teaches that exemplary tipping interface features include radio button 1202, which may be selected to direct the user to a site where he/she might leave a gratuity, and text boxes 1204 and 1206, where the user may enter a tip amount and any comments on the content or experience provided by the web site. Appx440, ¶ 191.

### 2. Van Vleck: presenting an interactive display during closing credits that allows a user to purchase recently viewed media content

Van Vleck[3] discloses methods of displaying streamed media content to a user and an interactive display module that enables the user to purchase recently viewed media content. Appx506, ¶ 1; Appx507, ¶ 21. As background, Van Vleck teaches that modern communication networks may be used to deliver media content, such as movies, television shows, or video-on-demand programs, to subscribers. Appx506, ¶ 2. Van Vleck teaches that a service provider may also provide the subscriber with an interactive display, but recognizes that one problem with presenting an interactive display is determining when to present the display. *Id*. Van Vleck discloses that presentation of the interactive display should not interrupt the media content being delivered to the subscriber or prevent the subscriber from viewing an entire media content segment. *Id*. Van Vleck further discloses that, when the subscriber is interacting with the interactive display, the interaction should not prevent the subscriber from viewing subsequent media content. *Id*. Thus, Van Vleck recognizes that there is a need for

[3] U.S. Patent Application Publication No. US 2009/0158369 (published June 18, 2009). Appx499-513.

an improved system and method for displaying media content and an interactive display. *Id.*

To solve this problem, Van Vleck discloses an interactive display module that determines a time to present the interactive display to the user, such as during opening credits or closing credits. Appx507, ¶ 22. As an example, Van Vleck describes an interactive display that is presented to the user at the start of the closing credits of a television show or movie included in the streamed media content, so that the interactive display does not interfere with the user viewing the streamed media content. *Id.* The interactive display module may be presented to the user along with or instead of the streamed media content, such as with a pop-up window that overlays the streamed media content, to enable user interaction with the interactive display while they view the streamed media content. *Id.*

In one embodiment, Van Vleck describes the interactive display module displaying both the first interactive display and the media content stream, each in a distinct portion of the display device, such as a first window displaying the first interactive display and a second window displaying the media content stream. Appx507-508, ¶ 23. Van

Vleck teaches that the two windows may be the same size or different sizes. *Id.*

#### 3. Twist: a tipping interface that includes a message and video from a charitable organization soliciting a charitable contribution

Twist[4] describes computerized systems and methods for customizing an electronic communication within a social networking system to include an option to contribute to a charitable cause. Appx474, ¶ 5. In particular, the option to contribute is a user-selectable element provided in tandem with the electronic communication. Appx474, ¶ 5. Twist teaches that its customized electronic communications provide the benefit of allowing charitable organizations to maximize donations by enabling access to a greater number of potential donors and intelligently suggesting donation quantities, as well as enabling users to both contribute to a charitable organization and communicate with others in the process. Appx474, ¶ 6.

Twist describes identifying content within the communication that indicates to the recipient a desire to solicit contributions to a charitable organization. Appx475, ¶ 20. Twist Figures 5A and 5B depicted below

[4] U.S. Patent Application Publication No. US 2018/0158114 (published June 7, 2018). Appx463-498.

illustrate examples of a graphical user interface displayed on user device that includes such a solicitation:




Fig. 5A Fig. 5B

Appx468; Appx474, ¶ 13. Figure 5A illustrates recipient device 104a displaying a post 504 within a timeline or newsfeed 518. Appx484, ¶ 83. Twist discloses that the sender 502 is a hypothetical charitable organization, Gorilla Freedom Foundation. *Id.* Twist further discloses

that the post 504 posted by the sender 502 includes a message portion 508 and a video 506**.** *Id*. Twist teaches that an option banner 510 includes one or more user-selectable options, including a "Like" option, a "Comment" option, and a "Donate" option (i.e., the option to contribute 512). *Id*. Twist further teaches that the charitable donation system 100 analyzes the content of the post 504 to determine that it is related to a charitable cause by verifying that the video 506 (or other media) belongs to or originates from a charitable organization (e.g., the Gorilla Freedom Foundation). Appx484, ¶ 84.

#### 4. Ignacio: a tipping interface that presents customers with monetary and non-monetary rewards in order to encourage customers to compensate hospitality workers well

Ignacio[5] discloses computer systems and methods for facilitating delivery of customer-specified service in a hospitality setting and ensuring appropriate gratuity payment in hospitality environments. Appx382, Abstract; Appx387, ¶ 2. Ignacio teaches that obtaining and acting on real-time knowledge of a customer's needs and service level desires and expectations may ensure that hospitality industry workers

[5] U.S. Patent Application Publication No. US 2014/0337099 (published November 13, 2014). Appx382-393.

maximize the gratuity received from the customer. Appx387, ¶¶ 3-6.

Ignacio Figure 2 (depicted below) is a flowchart illustrating an exemplary process 200 for communicating the service level expectations of customer 102 to hospitality worker 104:




FIG. 2

Appx384. Ignacio teaches that in step 208, system 100 receives gratuity level information from customer 102. Appx390, ¶ 45. Ignacio discloses that

a gratuity level may be specified as a percentage gratuity of the final bill (e.g., 12%), a value amount (e.g., $10), or a range (e.g., 12 to 25%, $5 to $10). *Id*. Ignacio teaches that, in one aspect, the gratuity level information is a minimum amount that customer 102 commits to providing if customer 102 receives the service specified in step 206. *Id*.

Ignacio further teaches that, in another aspect, a gratuity level is received from customer 102 at computing device 106 and subsequently presented to hospitality worker 104. Appx390, ¶ 49. Hospitality worker 104 may specify the service levels available at the gratuity level received. *Id*. The specified service levels may be presented to customer 102 via computing device 106, and the customer may select one of the available service levels, which is then presented to hospitality worker 104 via system 100. *Id*.

Ignacio also teaches presenting a customer with rewards (e.g., points) for specifying a generous gratuity level (e.g., 22%) in order to encourage customers to compensate hospitality workers well. Appx390, ¶ 48. Ignacio teaches that other monetary and non-monetary rewards may be given. *Id*.

#### 5. Mowry: computer-implemented methods that allow a user to fund a future feature film

Mowry[6] describes computer-implemented systems and methods for funding entertainment projects using incentives that at least partly include providing subsequent or additional media to a user after an initial or related network-based interaction occurs between the user and a site. Appx447, ¶ 2; Appx448, ¶ 19. For example, Mowry discloses a user providing financing for future feature films, which may include projects not yet produced, projects with or without finished screenplays, projects that are photographed but not yet edited or beyond "rough cut" edit versions, as well as projects completed though not yet distributed and/or not in their final possible formats. Appx449, ¶¶ 24-25.

#### 6. Carlson: providing a consumer with an alert or message that provides a suitable tip for a transaction based on prior transactions engaged in by the consumer or other suitable consumers

Carlson[7] describes a system and method for providing a consumer with an alert regarding a payment transaction, and more specifically, providing a consumer with an alert or message that can be used to

[6] U.S. Patent Application Publication No. US 2017/0109699 (published April 20, 2017). Appx443-462.
[7] U.S. Patent Application Publication No. US 2010/0325048 (published December 23, 2010). Appx358-381.

determine a suitable tip or gratuity for the transaction. Appx368, ¶ 2. Carlson teaches that the alert or message may contain a suggestion of a tip or gratuity amount based on the type of restaurant, the location of the restaurant, price category of the restaurant, prior transactions engaged in by the consumer or a suitable group of consumers, etc. Appx375, ¶ 75. Carlson further teaches that the suggested tip amount may be based on: a) tipping customs based on geographical location; b) previous consumer transactions with the same or a similar merchant or category of merchant; c) transactions of similar consumers with the same or a similar merchant or category of merchant as determined by certain characteristics of the consumer (demographic data, spending habits, etc.); or d) customers whom the consumer has indicated are representative of the consumer (such as friends, members of a common network, social network or group, etc.). Appx371, ¶¶ 40-46.

### C. The Board's Decision

The Board affirmed the examiner's rejection of claims 21-32 as patent ineligible under 35 U.S.C. § 101 and as obvious under 35 U.S.C. § 103. Appx1-25 (Board's decision); Appx243-279 (Non-Final Office Action); Appx333-345 (Examiner's Answer). As to obviousness, the

Board affirmed the examiner's rejections of claims 21-23 in view of Lim and Van Vleck; claims 24-27 in view of Lim, Twist, and Ignacio; claim 28 in view of Lim, Twist, Ignacio, and Mowry; and claims 29-32 in view of Lim and Carlson. Appx19-24.

#### 1. The Board affirmed the examiner's rejections of claims 21-32 as patent ineligible under § 101

The Board affirmed the examiner's rejection of claims 21-32 as patent ineligible under § 101. Appx7-19. In affirming, the Board designated claim 21 as representative. Appx17. The Board applied the Supreme Court's two-step framework in *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014) in determining that representative claim 21 is patent ineligible.[8]

##### a) *Alice* Step 1: the Board finds claim 21 is directed to the abstract idea of managing tip payments

At the first step of the *Alice* framework, the Board found that claim 21 is directed to an abstract idea, namely commercial or legal interactions, which fall within certain methods of organizing human

---

[8] *See* MPEP § 2106 and the USPTO's Patent Eligibility Guidance (October 2019 Update) available at https://www.uspto.gov/sites/default/files/documents/peg_oct_2019_update.pdf), both of which summarize Supreme Court and Federal Circuit precedent concerning patent eligibility.

activity. Appx8-15.

In particular, the Board agreed with the examiner that claim 21 as a whole recites managing commercial tipping payments by presenting a way for a media content consumer to make a tip payment. Appx8-12. Specifically, the Board found that tipping and accepting a tip are economic acts ordinarily performed in the stream of commerce. Appx10. Furthermore, the Board observed that the specification describes the invention as eliciting, facilitating, providing, and receiving tips, and thus the invention relates to managing commercial tipping payments. Appx11. The Board thus concluded that claim 21 recites managing commercial tipping payments by presenting a way for a media content consumer to make a tip payment, which is a commercial and legal interaction, and a method of organizing human activity. Appx12.

The Board also determined that claim 21 does not recite any additional elements that integrate the abstract idea into a practical application. Appx12-15. In particular, the Board found that all of the limitations recite generic computer processing. Appx13. The Board also found that claim 21 does not purport to improve the functioning of the

computer itself, nor does it effect an improvement in any other technology or technical field. Appx13-14. The Board also observed that the specification discloses generic equipment for applying the concept of tipping without disclosing an improvement in computer functioning. Appx14. Thus, the Board found that claim 21 amounts to nothing significantly more than an instruction to apply managing commercial tipping payments by presenting a way for a media content consumer to make a tip payment using some unspecified, generic computer. Appx14.

Based on this analysis, the Board concluded that claimed 21 is directed to the abstract idea of managing commercial tipping payments by presenting a way for a media content consumer to make a tip payment using a generic computer. Appx15.

**b) *Alice* Step 2: the Board finds that the additional claim elements do not provide significantly more than the recited judicial exception**

At the second step of the *Alice* framework, the Board determined that claim 21 does not recite additional claim elements that, when considered individually or as an ordered combination, provide significantly more than the recited abstract idea so as to transform it into a patent eligible invention. Appx15-17. Taking the claim elements

separately, the Board found that the function performed by the computer at each step of the process is purely conventional. Appx16 (citing *Elec. Power Grp. LLC v. Alstom SA.,* 830 F.3d 1350, 1353 (Fed. Cir. 2016); *In re Katz Interactive Call Processing Patent Litig.,* 639 F .3d 1303, 1316 (Fed. Cir. 2011)). In sum, the Board found that each step does no more than require a generic computer to perform generic computer functions. Appx16.

Considered as an ordered combination, the Board found that the computer components of claim 21 add nothing that is not already present when the steps are considered separately. Appx17. In particular, the Board found that the claimed sequence of data transmission-display-reception is equally generic and conventional. *Id.* (citing *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 715-716 (Fed. Cir. 2014) (finding sequence of receiving, selecting, offering for exchange, display, allowing access, and receiving payment to be conventional steps); *Inventor Holdings. LLC v. Bed Bath & Beyond, Inc.,* 876 F.3d 1372, 1378 (Fed. Cir. 2017) (finding sequence of data retrieval, analysis, modification, generation, display, and transmission applies abstract idea using generic computer technology); *Two-Way Media Ltd. v.*

*Comcast Cable Communications, LLC,* 874 F.3d 1329, 1339 (Fed. Cir. 2017) (finding sequence of processing, routing, controlling, and monitoring directed to be a conventional ordering of steps)). Thus, the Board concluded that the additional elements recited in the claim do not provide significantly more than the recited abstract idea. Appx17.

The Board found that independent method claims 24 and 29 are substantially similar to claim 21 and the remaining dependent claims merely describe process parameters. Appx17. Thus, the Board concluded that all of the claims (claims 21-32) are patent ineligible. Appx18.

In addressing the patent eligibility arguments in McDonald's appeal brief, the Board adopted the examiner's determinations and analysis. Appx18 (citing Appx245-256, Non-Final Office Action at pages 2-13; Appx336-337, Examiner's Answer at pages 4-5). As for the arguments raised in McDonald's reply brief, the Board found them unpersuasive. Appx18-19. First, in response to McDonald's argument that the claims recite a novel way to use technology to elicit and collect tips, the Board found that novelty is not at issue and is a distinct issue from patent eligibility. Appx18-19 (citing *Synopsys, Inc. v. Mentor*

*Graphics Corp.,* 839 F.3d 1138, 1151 (Fed. Cir. 2016)). The Board also stated that the purely functional nature of claims was insufficient to confer eligibility. Appx19 (citing *Affinity Labs of Texas, LLC v. Amazon.com Inc.,* 838 F.3d 1266, 1269 (Fed. Cir. 2016)).

In response to McDonald's assertion that the claims produce a useful result, the Board stated that utility is not at issue in determining patent eligibility and is insufficient to confer patent eligibility. Appx19 (citing *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.,* 916 F.3d 1363, 1367 (Fed. Cir. 2019)).

#### 2. The Board affirmed the examiner's rejection of claims 21-32 as obvious in view of the prior art

The Board affirmed the examiner's rejections of claims 21-32 as obvious over the prior art. Appx19-24. In affirming, the Board agreed with the examiner's obviousness findings and analysis.

##### a) The Board found claims 21-23 obvious based on Lim and Van Vleck

For claims 21-23, the Board affirmed the examiner's obviousness rejection based on Lim and Van Vleck. Appx19-20; Appx256-258; Appx337-338. More specifically, as recited in claim 21, the examiner found that Lim discloses a) providing media content to a consumer computer device, b) presenting a tipping interface to the consumer

computer device, and c) receiving tipping input from the consumer through the tipping interface, wherein the tipping input includes information associated with a tip, and wherein the tipping interface is a computer-based interface. Appx256-258; Appx337-338. As support, the examiner pointed to a number of paragraphs of Lim, including ¶¶ 184 and 189-191, and Figure 12. *Id.*; Appx416; Appx439-440.

The examiner found that Van Vleck teaches media content having closing credits and presenting a tipping interface at the beginning of or during closing credits, or at one or more trigger points during the media content. Appx258-261; Appx337-338. As support, the examiner pointed to the abstract of Van Vleck and ¶¶ 2-14 and 21-23. *Id.*; Appx499, Appx506-508.

The Board agreed with the examiner that it would have been obvious to the skilled artisan to combine the prior art teachings to provide an improved system and method for displaying media content and an interactive display that does not interrupt the media content being delivered to the user, prevent the subscriber from viewing an entire media content segment, or prevent the subscriber from viewing subsequent media content. Appx19-20; Appx260-261; Appx338. In

rejecting McDonald's argument that the examiner failed to present any evidence or rationale for predictable success, the Board found that Van Vleck only adds timing parameters to Lim, which are predictably successful on their face. Appx20.

#### b) The Board found claims 24-27 obvious based on Lim, Twist, and Ignacio

For independent claim 24, the examiner and the Board relied on the same teachings of Lim discussed above for claims 21-23 to find that Lim teaches a) providing media content to a consumer computer device, b) presenting a tipping interface, related to the media content, to the consumer computer device, and c) receiving tipping input from the consumer through the tipping interface, wherein the tipping input includes information associated with a tip, and wherein the tipping interface is a computer-based interface. Appx20-22; Appx262-263.

With regard to the elicitation content limitation of independent claim 24 and dependent claim 25, the examiner found that Twist teaches a tipping interface that includes elicitation content. Appx32; Appx264-266. As support, the examiner cited to Twist ¶¶ 83-87 that teach a charitable donation system providing a customized post to a recipient within a newsfeed that includes an option to contribute based

on the evaluation of donation histories, behavior models, profile information, and geographic information. Appx264-266; Appx484. The Board agreed with the examiner that it would have been obvious to combine the teachings of Lim and Twist to provide an integrated online donation option that allows charitable organizations to maximize donations by enabling access to a greater number of potential donors and intelligently suggesting donation quantities, and by enabling users to both contribute to a charitable organization and communicate with others in the process. Appx20-22; Appx264-266 (citing Twist Abstract and ¶¶ 2-7 at Appx463, Appx474).

With regard to the upsell interface limitation of independent claim 24 and dependent claim 27, the examiner found that Ignacio teaches a tipping interface that includes an upsell interface. Appx32; Appx264-267. As support, the examiner cited to Ignacio ¶¶ 45-50 that teach providing customers with monetary and non-monetary rewards for specifying a generous gratuity (e.g., 22%). Appx264; Appx390. The Board agreed with the examiner that it would have been obvious to combine the teachings of Lim, Twist, and Ignacio to provide an improved system and method to maximize the gratuity received from a

customer. Appx20-22; Appx265-267 (citing Ignacio Abstract and ¶¶ 3-14 at Appx382, Appx387-388).

With regard to the limitation of dependent claim 26 that requires elicitation content comprising a message from an actor, producer, director, or developer of the media content, the examiner found that Twist ¶¶ 83-87 teaches a charitable organization presenting a post that includes a message and a video to recipient, as well as an option banner that includes one or more user-selectable options to respond, including a "Like" option, a "Comment" option, and a "Donate" option (i.e., the option to contribute). Appx266; Appx484. The examiner further found that the combination would allow the charitable organization developing the media content to utilize elicitation content in messages and videos that feature the organization itself or a producer or director. Appx341. The Board agreed with the examiner that it would have been obvious to combine the teachings of Lim, Twist, and Ignacio to include elicitation content comprising a message from an actor, producer, director, or developer of the media content because it provides for an integrated online donation option that allows charitable organizations to maximize donations by enabling access to a greater number of

potential donors and intelligently suggesting donation quantities and by enabling users to both contribute to a charitable organization and communicate with others in the process. Appx22; Appx266; Appx340-341 (citing Twist Abstract and ¶¶ 2-7 at Appx463, Appx474).

#### c) The Board found dependent claim 28 obvious based on Lim, Twist, Ignacio, and Mowry

Claim 28 depends from independent claim 24. The Board relied on Lim, Twist, and Ignacio as teaching the limitations of independent claim 24 as discussed above. With regard to the limitation of claim 28 reciting that the tipping interface includes an indication that a tip will be used for a particular purpose, such as financing a sequel to a feature film, the Board agreed with the examiner that Mowry discloses that limitation. Appx23; Appx267-268. As support, the examiner pointed to Mowry ¶¶ 24-26, 31-33, 41-43, 51-53, and 59-61 as disclosing the financing of a sequel of a feature film, options for projects not yet produced, and other future projects. Appx267-268; Appx449-453. The Board agreed with the examiner that it would have been obvious to combine the teachings of Lim, Twist, Ignacio, and Mowry to provide for financing a sequel in exchange for the media content because it allows for a system and method for incentive-based exchange, such as

improvements and financing, for project contribution. Appx23; Appx268 (citing Mowry Abstract and ¶¶ 3-7 at Appx443, Appx447); Appx342.

#### d) The Board found claims 29-32 obvious based on Lim and Carlson

For claims 29-32, the Board affirmed the examiner's obviousness rejection based on Lim and Carlson. Appx23; Appx268-274; Appx342-344. More specifically, for the same reasons discussed above with regard to independent claim 21, the examiner found that Lim discloses a) providing media content to a consumer computer device, b) presenting a tipping interface to the consumer computer device, and c) receiving tipping input from the consumer through the tipping interface, wherein the tipping input includes information associated with a tip, and wherein the tipping interface is a computer-based interface. Appx256-258; Appx337-338.

The examiner found that Carlson teaches providing an alert or message to a consumer that includes tipping information, such as a suggested tip amount, based on the type of restaurant, the location of the restaurant, price category of the restaurant, prior transactions engaged in by the consumer or a suitable group of consumers. Appx270-271; Appx342-344. As support, the examiner pointed to Carlson ¶¶ 40-

49 and 74-76. *Id.*; Appx371, Appx375.

The Board agreed with the examiner that it would have been obvious to the skilled artisan to combine the prior art teachings to provide a system that provides an alert that may include a suggested amount for a tip and provides the consumer with information that may be used to determine an amount for the tip. Appx271 (citing Carlson Abstract and ¶¶ 2-21 at Appx358, Appx368-369).

Because McDonald did not separately argue the limitations of claims 30-32, but instead only argued whether there was adequate motivation to combine Lim and Carlson, the Board likewise affirmed the examiner's obviousness rejections of those claims. Appx23.

## III. Summary of the Argument

The Board correctly determined that claims 21-32 are patent ineligible under 35 U.S.C. § 101. At *Alice* step one, the Board correctly determined that McDonald's representative claim 21 is directed to the abstract idea of managing commercial tipping payments, which is a method of organizing human activity. And at *Alice* step two, the Board rightly determined that claim 21 does no more than implement the abstract idea on a generic computer and, thus, fails to recite an element

or combination of elements that transform the abstract idea into a patent eligible application.

McDonald's argument that claim 21 is patent eligible because it is directed to "a novel technology" fails because novelty is not relevant to the eligibility inquiry. McDonald's argument that using a computer to facilitate tipping integrates the abstract idea into a practical application is likewise unpersuasive. As the Board correctly pointed out that, under *Alice*, abstract ideas do not become patent eligible merely because an applicant applies them with a general-purpose computer.

Substantial evidence supports the Board's finding that claims 21-32 would have been obvious based on Lim in combination with one or more of Van Vleck, Twist, Ignacio, Mowry, and Carlson. McDonald does not dispute the Board's finding that Lim teaches all of the claim limitations that independent claims 21, 24, and 29 have in common: a) providing media content to a consumer computer device, b) presenting a computer-based tipping interface to the consumer computer device, and c) receiving tipping input from the consumer through the tipping interface. The Board correctly determined that the additional limitations are taught by the other references and found that it would

have been obvious to combine those teachings with Lim to arrive at the claimed invention for various reasons, each of which the examiner and the Board clearly articulated.

McDonald's arguments are all unpersuasive. For claim 21, McDonald concedes that Van Vleck teaches the additional limitation of presenting a tipping interface during certain trigger points, such as during closing credits, but alleges that the Board provided no rationale for combining Lim and Van Vleck. This argument fails because it ignores the rationale provide by the examiner: not interrupting the media content being delivered to the user and allowing the subscriber to view an entire media content segment as well as subsequent media content. McDonald also raises a new argument that there is no motivation to combine Lim and Van Vleck because Lim allegedly teaches "static content" (as opposed to video), but this argument is forfeited and unpersuasive because Lim is not limited to "static content" and, in fact, teaches video content. McDonald also argues that there is no reasonable expectation of "predictable" success, but the Board articulated an adequate reason why the combination would be desirable and found there was nothing unpredictable about the claimed tipping

scheme. And McDonald presents no evidence of unexpected results.

Claim 24 shares the common limitations with claim 21 that are taught by Lim, and further recites that the tipping interface includes elicitation content or an upsell interface. The Board rightly found that Twist teaches the claimed elicitation through its disclosure of a charitable organization presenting a social media post that includes both a message portion and a video portion, as well as a banner that includes an option to "donate." McDonald does not dispute the Board finding that Ignacio teaches an upsell interface. McDonald's argument that the Board failed to provide a reason to combine Lim, Twist, and Ignacio fails because it ignores the rationale set forth by the examiner, namely, that the combination would provide an integrated online donation option that enables charitable organizations to maximize donations and encourage customers to tip hospitality workers well. McDonald's argument that "elicitation content" requires more than Twist's alleged naked request for donation also fails because McDonald's specification describes "elicitation content" broadly as encompassing a request to donate. Even under McDonald's overly narrow construction, Twist's social media post having a message, a

video, and an option to donate meets the “elicitation content” limitation.

Dependent claim 26 requires that the elicitation content include a message from an actor, producer, director, or developer of the media content. Twist’s social media post from a charitable organization that includes a message portion and a video meets this limitation. McDonald’s argument that the developer for the media content must be different than the entity that sends the message is both forfeited and unsupported by claim language.

With regard to dependent claim 28 that recites funding a sequel to a movie, McDonald does not dispute that Mowry teaches that limitation, but argues that Mowry does not teaching tipping and that the Board provided no motivation to combine Lim and Mowry. But the Board relied on Lim—not Mowry—as teaching tipping, and McDonald simply ignores the rationale provided by the examiner to combine Lim and Mowry to achieve the claimed invention.

With regard to claim 29, McDonald does not dispute that Lim and Carlson teach all of the claim limitations, but argues that the examiner and the Board failed to provide any reason to combine the references. This argument fails because the Board stated that it would be obvious

to combine Lim and Carlson in order to provide a system that provides an alert that may include a suggested amount for a tip and provides the consumer with information that may be used to determine an amount for the tip.

If the Court affirms the Board's patent ineligibility determination, it need not reach the obviousness grounds.

# IV. ARGUMENT

## A. Standard of review

McDonald has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004); *In re Jung*, 637 F.3d 1356, 1365 (Fed. Cir. 2011). The Board's actions may not be set aside unless they are "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law." *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004); 5 U.S.C. § 706(2)(A).

"Patent eligibility under 35 U.S.C. § 101 is a question of law that may contain underlying issues of fact." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018) (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)).

Whether an invention would have been obvious is a legal question based on underlying findings of fact. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). What a reference teaches is a question of fact. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966); *Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995).

This Court reviews questions of law *de novo* and affirms the Board's factual findings that are supported by substantial evidence. *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002); *see also* 5 U.S.C. § 706(2)(E). Substantial evidence "is something less than the weight of the evidence but more than a mere scintilla of evidence," *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000), and "means such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion reached. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Jolley*, 308 F.3d at 1329.

### B. The Board correctly determined that claims 21-32 are patent ineligible under § 101

The Board correctly affirmed the Examiner's rejection of McDonald's pending claims 21-32 as patent ineligible. Appx7-19. In so affirming, the Board designated claim 21 as representative. Appx17.

By statute, "any new and useful process[es], machine[s], manufacture[s], or composition[s] of matter, or any new and useful improvement[s] thereof" is eligible for patent protection. 35 U.S.C. § 101. However, the Supreme Court has long held that the statutory provision includes an implicit exception for "[l]aws of nature, natural phenomena, and abstract ideas." *See, e.g.*, *Alice*, 573 U.S. at 216.

In *Alice*, the Supreme Court held that a two-step framework governs the eligibility analysis. At the first step, the USPTO determines whether the claims are directed to an abstract idea (or other ineligible concepts). *Id*. at 217. If so, the analysis proceeds to the second step, where the USPTO determines whether the additional claim elements, considered individually and as an ordered combination, recite significantly more to transform the abstract idea into a patent eligible application. *Id*. at 221. As part of the second step, the USPTO determines whether the additional elements are well-understood,

routine, and conventional elements that were previously known to the industry. *Id.* at 225.

Applying this two-step framework, the Board properly determined that representative claim 21 is patent ineligible.

### 1. Claim 21 is directed to the abstract idea of managing commercial tipping payments

At *Alice* step one, the Board correctly determined that claim 21 is directed to managing commercial tipping payments, which is a commercial and legal interaction, and a method of organizing human activity. Appx9-15. The Supreme Court and this Court have held similar claimed subject matter to be directed to an abstract idea. *See e.g., Bilski v. Kappos*, 561 U.S. 593, 611-612 (2010) (finding claims directed to abstract idea of hedging, which is a fundamental economic practice)*; Alice*, 573 U.S. at 219- 20 (finding claims directed to abstract idea of intermediated settlement, which is a fundamental economic practice)*; Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1383 (Fed. Cir. 2017) (finding claims directed to the abstract idea of mass transit financial transactions); *Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044, 1054-55 (Fed. Cir. 2017) (finding claims directed to the abstract idea of processing an application for

financing a purchase).

In particular, the Board correctly determined that claim 21, considered as a whole, is directed to the concept of managing commercial tipping payments by presenting a way for a media content consumer to make a tip payment. Appx10. As the Board observed, limitations 1-5 recite the functions of transmitting, displaying, and receiving data using generic computer technology in order to manage commercial tipping payments. Appx10-15. And, as the Board found, managing commercial tipping payments is an economic act ordinarily performed in the stream of commerce, and thus falls within certain methods of organizing human activity. *See, e.g., Bilski*, 561 U.S. at 628; *Alice*, 573 U.S. at 219- 20; *Smart Sys. Innovations,* 873 F.3d at 1383; *Credit Acceptance Corp.*, 859 F.3d at 1054-55; *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (finding claims directed to abstract idea of computer-implemented method of offer-based price optimization, which is a fundamental economic concept). The Board further found that claim 21 does not purport to improve computer technology or any other technology or technical field. Appx13-14. Thus, the Board correctly determined that representative claim 21

is directed to an abstract idea.

#### 2. The additional claim elements do not transform the abstract idea into a patent eligible application

At *Alice* step two, the Board correctly determined that the additional elements in claim 21, considered individually and as an ordered combination, fail to transform the abstract idea into a patent eligible application. Appx15-17. More specifically, the Board rightly found that each claimed step considered separately does no more than require a generic computer to perform conventional computer functions. Appx16-17; *see Alice,* 573 U.S. at 225 (finding that each claim step "does no more than require a generic computer to perform generic computer functions"). Indeed, as the Board found, claim limitations 1-5 merely require receiving, transmitting, and displaying tipping data using any generic computer. Appx13-14. The Board also correctly found that, when the additional claim elements are considered as an ordered combination, the computer components add nothing that is not already present when they are considered individually. Appx17; *see Alice*, 573 U.S. at 225-26.

#### 3. McDonald's arguments that the claims are patent eligible are unpersuasive

McDonald also argues that claim 21 is directed to a method for

"using technology to improve presentation of streamed media content to a user and for using technology to facilitate tipping in association with a user's consumption of media content." Br. at 8. But the only "technology" required by the claims is a generic computer, which is insufficient to make the claim patent eligible. *Alice*, 573 U.S. at 225-226, (holding that applying the abstract idea using a generic computer is not enough to transform the abstract idea into a patent-eligible invention.).

McDonald also argues that claim 21 is not directed an abstract idea because it is not directed to a practice that is "fundamental," "conventional," or "well-known," but is instead "a novel technology." Br. at 8. This argument fails because, as the Board correctly determined, novelty does not inform the eligibility inquiry. Appx18. Indeed, as this Court has held, "a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.,* 839 F.3d 1138, 1151 (Fed. Cir. 2016).

McDonald further argues that, even if tipping is a commercial interaction that is a method of organizing human activity, the claims are not directed to that abstract idea because they use computers to

interact with a user and facilitate tipping, which integrates the general idea of tipping into a practical application. Br. at 8-9. But, as the Board correctly determined, abstract ideas do not become patent eligible merely because an applicant applies them with a general-purpose computer. *Alice*, 573 U.S. at 222-24; Appx16. Moreover, McDonald does not explain how claim 21 recites an improvement rooted in computer technology or how the claimed invention improves the functioning of the computer technology used to carry out the invention. Br. at 8-9.

McDonald argues that independent claims 24 and 29 are patent eligible for the same reasons as claim 21. Br. at 9. As none of McDonald's arguments concerning claim 21 pass muster, claims 24 and 29 are also patent ineligible for the same reasons. As McDonald did not argue any of the dependent claims (claims 22-23, 25-28, and 30-32) separately, this Court should affirm the Board's conclusion that claims 21-32 are patent ineligible. If the Court affirms the Board's patent ineligibility determination, it need not decide the obviousness of the claims.

### C. Substantial evidence supports the Board's findings that claims 21-32 would have been obvious over the combined teachings of the prior art

The Board properly found that claims 21-32 would have been obvious over the prior art. Specifically, the Board found that claims 21-23 would have been obvious over the combination of Lim and Van Vleck; claims 24-27 over the combination of Lim, Twist, and Ignacio; claim 24 over the combination of Lim, Twist, Ignacio, and Mowry; and claims 29-32 over the combination of Lim and Carlson. Substantial evidence supports the Board's findings regarding what the prior art teaches, and that a person of ordinary skill in the art would have had a motivation to combine the prior art and would have had a reasonable expectation of success in doing so.

In its opening brief, McDonald separately contests the Board's obviousness determination for claims 21, 24, 26, 28, and 29. McDonald's arguments fail for each of those claims.

#### 1. Independent claim 21 would have been obvious in view of Lim and Van Vleck

McDonald does not dispute that Lim and Van Vleck separately disclose all of the limitations of claim 21. Br. at 11-14. Rather, McDonald takes issue with the examiner's findings that a skilled

artisan would have been motivated to combine the art with a reasonable (and predictable) expectation of success.

*First*, McDonald argues that the examiner provided no justification why it would have been obvious to combine Van Vleck's disclosure of a media-content-related interface with Lim's disclosure of tipping for "static content," and instead concluded, with no explanation, that the combination provided "an improved system and method for displaying media content and an interactive display.'" Br. at 11-12. But McDonald ignores the examiner's full rationale for combining Lim and Van Vleck, namely, that the combination of Lim and Van Vleck "provide[] for an improved system and method for displaying media content and an interactive display *such that it does not interrupt the media content being delivered to the user, prevent the subscriber from viewing an entire media content segment, and does not prevent the subscriber from viewing subsequent media content*." Appx338 (emphasis added) (citing to Van Vleck at Abstract and ¶¶ 2-14 at Appx499, Appx506-507). Moreover, as the Board observed, such a motivation is expressly taught by Van Vleck. Appx20 (citing Examiner's Answer at Appx338); Appx506.

*Second*, McDonald asserts that the Board's statement that "Van Vleck only adds timing parameters to Lim, which are predictably successful on their face" is conclusory. Br at 12. In particular, McDonald argues that, because Lim allegedly is directed to "static content" and timing does not matter for static content, it would not have made sense to add Van Vleck's timing parameters for video to Lim's static content. *Id*. This argument is forfeited and it also lacks merit.

McDonald did not raise this "static content" argument in its briefing to the Board, and thus it is forfeited. Appx318-319; Appx346-349; *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("We have regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."); *see also In re Watts*, 354 F.3d 1362, 1368 (Fed. Cir. 2004) ("Because the appellant failed to argue his current interpretation of the prior art below . . . we hold that appellant has waived [this argument]."). Absent exceptional circumstances, an argument not properly raised before the Board will not be considered on appeal. *See In re Couvaras*, 70 F.4th 1374, 1379 (Fed. Cir. 2023). As no exceptional circumstance exists here

to justify a departure from this principle, this Court should decline to entertain McDonald's "static content" argument.

McDonald's "static content" argument also lacks merit. Lim is not limited only to "static content," i.e., text/non-video, as McDonald alleges. Br. at 11-12. Rather, Lim broadly refers to media content and teaches that media content may come in various formats, including "plain text, recorded voice, live voice, graphics, *streaming video*, [and] *live streaming video*." Appx433, ¶ 99 (emphasis added). While Lim refers to one example of media content in the form of a scientific journal, nothing limits the content to only "static content." Indeed, Lim expressly discloses "streaming video" as one format of media content, demonstrating that the types of media content are not so limited. *Id.*; Appx430, ¶ 62.

*Third*, McDonald argues that the rationale of the examiner and the Board for combining Lim and Van Vleck is flawed because there is no reasonable expectation of success. Br. at 12-13. "Reasonable expectation of success refers to the likelihood of success in combining references to meet the limitations of the claimed invention." *Elekta Limited v. ZAP Surgical Systems, Inc.*, 81 F.4th 1368, 1375 (2023). In

making its argument, McDonald ignores the rationale for combining the references set forth by the examiner and the Board, i.e., providing a tipping interface during closing credits in order to avoid interrupting the media content and preventing the subscriber from viewing the entire or subsequent media content, as taught by Van Vleck ¶ 2. Appx20; Appx338; Appx506.

McDonald's assertion that there would have been no reasonable expectation of success in presenting a tipping interface during closing credits because "the conventional thought has long been that a consumer must pay for media content up front" (Br. at 13) lacks merit. As the Examiner found, Van Vleck expressly teaches presenting the tipping interface at either the beginning of the media content or during the closing credits. Appx258. And, as the Board found, the obviousness rejection simply relies on adding those timing parameters to Lim, which are predictably successful on their face. Appx20.

Moreover, the proposed combination need only be desirable, not necessarily the most desirable or successful option available, to be obvious. *Elekta*, 81 F.4th at 1374 ("Nor does an obviousness showing 'require that a particular combination must be the preferred, or the

most desirable, combination described in the prior art in order to provide motivation for the current invention.'" (citing *Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*, 923 F.3d 1051, 1059 (Fed. Cir. 2019)). The pertinent question is "'whether there is something in the prior art as a whole to suggest the *desirability*, and thus the obviousness, of making the combination,' not whether there is something in the prior art as a whole to suggest that the combination is the *most desirable* combination available." *In re Fulton*, 391 F.3d 1195, 1200 (Fed. Cir. 2004) (citing *In re Beattie*, 974 F.2d 1309, 1311 (Fed. Cir. 1992)).

Here, the Board articulated a sufficient reason to make the proposed combination by relying on Van Vleck's teaching of the desirability of presenting a media-content-related interface during closing credits, such that it does not a) interrupt the media content being delivered to the user, b) prevent the subscriber from viewing an entire media content segment, or c) prevent the subscriber from viewing subsequent media content. Appx338 (citing to Van Vleck Abstract at Appx499 and ¶¶ 2-14 at Appx506-507). Moreover, as the Board rightly observed, there is nothing unpredictable about presenting a tipping

interface to solicit tips during the closing credits of a streamed video. Appx20. Nor does McDonald allege or present evidence of unexpected results attributable to the claimed invention. Br. at 5-21.

### 2. Independent claim 24 would have been obvious based on Lim, Twist, and Ignacio

McDonald does not dispute that Lim teaches the limitations that claims 21 and 24 have in common, e.g., providing media content, presenting a tipping interface, receiving tipping input, etc. Br. at 14-19. McDonald only disputes whether the prior art teaches one or more of the alternative limitations that require that the tipping interface include either a) elicitation content, b) an upsell interface, or c) an indication that a tip will be used for specific purposes, such as financing a sequel for the media content, and whether it would have been obvious to combine the prior art with Lim. The Board correctly agreed with the examiner findings that Twist and Ignacio teach two of the alternative limitations, namely, the elicitation content and upsell interface limitations, respectively, and that it would have been obvious to combine them with Lim. Appx20-22; Appx264-265.

#### a) It would have been obvious to combine Twist's elicitation content with Lim

As the examiner properly found, Twist teaches elicitation content

in the form of a hypothetical charitable organization called the "Gorilla Freedom Foundation" using social media posts, which include a message portion and a video as depicted in Figures 5A and 5B, to seek donations for charitable causes. Appx264 (citing Twist ¶¶ 83-87 at Appx484); Appx468. The examiner also found that Twist provides a reason to modify Lim to add elicitation content, i.e., to provide an integrated online donation option that allows charitable organizations to maximize donations by enabling access to a greater number of potential donors and intelligently suggesting donation quantities and by enabling users to both contribute to a charitable organization and communicate with others in the process. Appx264 (citing Twist at Abstract and ¶¶ 2-7 at Appx463, Appx474).

McDonald argues that Twist fails to teach the "elicitation content" limitation because, according to McDonald, Twist only discloses a "naked solicitation" or request to donate, and does not disclose a tipping interface that includes *elicitation* content. Br. at14. McDonald does not propose a construction for "elicitation content," but instead argues that it "is more than a mere request to tip." This argument fails for two reasons.

*First*, the Board's construction of elicitation content as a process of getting information from someone that begins with a solicitation is reasonable, under the broadest reasonable interpretation standard, because it is consistent both with the plain and ordinary meaning of the term and also with the specification. During patent examination, the pending claims must be "given their broadest reasonable interpretation consistent with the specification." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1316 (Fed. Cir. 2005); *In re Am. Acad. of Sci. Tech. Ctr.,* 367 F.3d 1359, 1364 (Fed. Cir. 2004). Here, the specification does not define the term "elicitation content," but discloses that the term broadly encompasses various types of content, including video, audio, and "information or communication designed to encourage the consumer to leave or provide a tip, or at least to inform the consumer of the possibility of, opportunity for, and desirability of leaving or providing a tip." Appx48-49, ¶ 39. Thus, the Board's construction of "elicitation content" is consistent with the plain meaning of the word and the specification's disclosure of differing types of "elicitation content" that include a communication designed to inform the consumer of the possibility of providing a tip. McDonald does not grapple with the Board's construction of "elicitation

content” under the broadest reasonable interpretation standard. Br. at 14-17.

*Second*, even under McDonald’s narrower proposed construction of “elicitation content” as “more than a mere request to tip,” Twist easily meets that limitation because Twist teaches a solicitation for a charitable contribution that includes both a message portion and a video portion, as well as an option banner that includes an option to “Donate.” Appx484, ¶ 83. And the examiner specifically cited to this disclosure of Twist as teaching the “elicitation content” limitation. Appx264 (citing Twist ¶¶ 83-87, Appx484); Appx339.

McDonald also argues that “neither the Examiner nor the PTAB articulates any reasoning for combining Lim’s disclosure about media content tipping with Twist’s disclosure about using social media to seek donations for charitable causes.” Br. at 17. To support this argument, McDonald states that the “Examiner and PTAB rely on the incorrect premise that *any improvement* is per se obvious.” *Id.* (emphasis in original). This argument fails because McDonald ignores the examiner’s rationale for combining Lim and Twist, namely, “to provide an integrated online donation option that enables charitable organizations

to maximize donations by enabling access to a greater number of potential donors and intelligently suggesting donation quantities and by enabling users to both contribute to a charitable organization and communicate with others in the process." Appx264. The examiner further cited to Twist's Abstract and ¶¶ 2-7 as express support for this rationale. *Id.* (citing Twist at Appx463, Appx474 at ¶ 6). Thus, contrary to McDonald's assertion, the examiner set forth an adequate reason to combine the prior art with a reasonable expectation of success. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (the obviousness inquiry typically requires an analysis of "whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue."); *Elekta*, 81 F.4th at 1374.

#### b) It would have been obvious to combine Ignacio's upsell interface with Lim

With regard to the upsell limitation, McDonald does not dispute the examiner's finding that Ignacio teaches that limitation through its disclosure of presenting "customer 102 with rewards (e.g., points) for specifying a generous gratuity level (e.g., 22%) in order to encourage customer 102 to compensate hospitality worker well." Br. at 18; Appx22; Appx266 (quoting Ignacio ¶ 48 at Appx390). Instead, McDonald argues

that "neither the Examiner nor the PTAB has articulated any reason for combining Ignacio's disclosure of rewards for higher tips for hospital service with Lim's disclosure regarding tipping for media content." Br. at 18. In an attempt to support this argument, McDonald asserts that the examiner's rationale for making this combination was "to provide an improved system," and that alleging improvement by itself is insufficient to establish obviousness. *Id*.

McDonald's argument fails because it ignores the examiner's more fulsome rationale for combining Lim and Ignacio, namely, that it would have been obvious to combine the teachings of Lim, Twist, and Ignacio in order "to provide an improved system and method to maximize the gratuity received from a customer," as expressly taught by Ignacio. Appx267 (citing Ignacio Abstract and ¶¶ 3-14 at Appx382, Appx387-388). This is an adequate reason to support the Board's determination that it would have been desirable and obvious to combine the prior art to achieve the claimed invention. *Elekta*, 81 F.4th at 1374; *KSR*, 550 U.S. at 418 (the obviousness inquiry typically requires an analysis of "whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.").

McDonald also argues that the "both the Examiner and the PTAB failed to even articulate how a disclosure about gratuities for hospital service (Ignacio) is analogous art to a disclosure about tipping for media content." Br. at 18. This argument is forfeited because McDonald did not raise this argument in its briefing to the Board, and no exceptional circumstances exist to excuse McDonald's forfeiture. Appx319-321; Appx346-349; *In re Google*, 980 F.3d at 863; *In re Watts*, 354 F.3d at 1368; *In re Couvaras*, 70 F.4th at 1379. The argument is also forfeited because McDonald fails to provide a particularized argument for why Lim and Ignacio are non-analogous art to the claimed invention. Br. at 18; *see SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (finding that when a party includes no developed argumentation on a point, the court treats it as waived) (citing *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.... Especially not when the brief presents a passel of other arguments .... Judges are not like pigs, hunting for truffles buried in briefs.").

McDonald's argument also lacks merit because Lim and Ignacio

are analogous art to the claimed invention under this Court's precedent. In order for a reference to be proper for use in an obviousness rejection, the reference must be analogous art to the claimed invention. *In re Bigio,* 381 F.3d 1320, 1325 (Fed. Cir. 2004). A reference is analogous art to the claimed invention if: (1) the reference is from the same field of endeavor as the claimed invention (even if it addresses a different problem); or (2) the reference is reasonably pertinent to the problem faced by the inventor (even if it is not in the same field of endeavor as the claimed invention). *Id*. Here, Lim and Ignacio are from the same field of endeavor as the claimed invention, i.e., encouraging and facilitating online gratuity payments between customers and content/service providers. Appx41-42, ¶¶ 1-7. In particular, Lim describes compensating content providers for goods and services they offer online with a computer-based tipping (gratuity) scheme. Appx430, ¶ 62. Likewise, Ignacio discloses computer program products for providing customized customer service and using a mobile device to ensure appropriate gratuity payment in hospitality environments." Appx382, Abstract.

Lim and Ignacio are also reasonably pertinent to the problem

faced by the inventor, namely, allowing content/service providers to use a computer-based interface to elicit and receive tips, particularly when the service provider is not physically present. Appx42, ¶¶ 6-9; Appx430, ¶ 62; Appx382, Abstract.

#### 3. Dependent claim 26 would have been obvious based on Lim, Twist, and Ignacio

Dependent claim 26 depends from claim 24 and adds the limitation "wherein the elicitation content comprises a message from an actor, producer, director, or developer of the media content." Appx32. The examiner correctly found that Twist teaches this limitation for the same reasons that Twist teaches the "elicitation content" limitation under McDonald's overly narrow proposed construction of that term, as discussed above for claim 24. Appx266 (citing Twist ¶¶ 83-87). More specifically, the examiner correctly found that Twist teaches that a charitable entity (such as the Gorilla Foundation mentioned in Twist ¶ 83) may solicit a donation by presenting a post in a recipient's social network feed, where the post includes a message portion and a video, as well as an option banner that includes a user-selectable option to "Donate." Appx266 (citing Twist ¶¶ 83-87 at Appx484). Thus, as the examiner found, Twist teaches that "the Charitable Organization

developing the media content may also utilize elicitation content in messages and videos [that] may feature the organization itself or as producer or director." Appx340-341.

McDonald argues that Twist does not disclose an "actor, producer, director, or developer" in the video, and that the developer for the media content must be different than the entity that sends the message. Br. at 19. McDonald's argument that the media content and message must be from different entities is forfeited because it was never presented to the Board. *In re Google*, 980 F.3d at 863; *In re Watts*, 354 F.3d at 1368; *In re Couvaras*, 70 F.4th at 1379.

The argument is also unpersuasive because claim 26 only requires that the elicitation content comprises a message from an actor, producer, director, or developer of the media content. Appx32. There is no requirement that the message and media content (e.g., video) be from two different entities. Twist teaches that the charitable organization, i.e., the Gorilla Freedom Foundation, presents a post on a social media feed that includes both a message portion and a video (i.e., media content). Appx484, ¶ 83. Twist also teaches that system verifies that the video is "a video that belongs to or originates from a charitable

organization (e.g., the Gorilla Freedom Foundation).” Appx484, ¶ 84. Thus, Twist teaches that the message and video are both from the charitable organization, i.e., the Gorilla Freedom Foundation, which meets the limitations of claim 26.

#### 4. Dependent claim 28 would have been obvious based on Lim, Twist, Ignacio, and Mowry

Claim 28 depends from independent claim 24 and adds the limitation “wherein the tipping interface includes an indication that a tip will be used for at least one of the following: financing a sequel for the media content, improving streaming for the media content, improving filtering for the media content, improving distribution of the media content, and improving affordability of the media content.” Appx33. McDonald does not dispute that Mowry teaches incentivizing individuals to support a future project, e.g., making a sequel to a movie. Br. at 20. Rather, McDonald argues that “Mowry makes no disclosures about tipping,” and that the “Examiner’s and PTAB’s rationale for combining prior art references is insufficient” because “[i]mprovement does not per se establish obviousness.” *Id*. Neither argument is persuasive. The Board did not rely on Mowry to teach tipping, but instead relied on Lim as teaching that limitation. Appx23. And the

Board did not rely on "improvement" as the basis to combine the teachings of Lim and Mowry. *Id*. Rather, the examiner and the Board found that it would have been obvious to combine the prior art in order to allow for a system and method for incentive-based exchange, such as improvements and financing, for project contribution, as taught by Mowry. *Id*.; Appx268; Appx342.

#### 5. Independent claim 29 would have been obvious based on Lim and Carlson

Independent claim 29 recites the same base limitations (providing media content to a consumer computer device, presenting a tipping interface to the consumer computer device, and receiving tipping input from the consumer) as independent claims 21 and 24, which Lim teaches as discussed above. Claim 29 further recites that "the tipping interface includes tipping estimate information and the tipping estimate information is based at least in part on at least one item from the following list: tipping data for another consumer of the media content; and tipping data for another consumer that shares at least one common characteristic with the consumer; or presenting the tipping interface comprises determining characteristics of the tipping interface based on historical tipping results." Appx33. The examiner and the

Board found that Carlson teaches this additional limitation, which McDonald does not dispute. Br. at 20-21; Appx23; Appx271. The examiner and the Board found that it would have been obvious to combine the teachings of Lim and Carlson in order to provide a system that provides an alert that may include a suggested amount for a tip and provides the consumer with information that may be used to determine an amount for the tip, as taught by Carlson. Appx271 (citing Carlson Abstract at Appx358, Carlson ¶¶ 2-21 at Appx368-369).

McDonald argues that the examiner and the PTAB provide no justification for combining Lim and Carlson (Br. at 20-21). But that is unpersuasive given that the examiner provided an adequate rationale for combining their teachings as discussed above. Appx271. McDonald further argues that it would not have been obvious to combine Carlson's disclosure of a media-content-related interface with Lim's disclosure about tipping for "static content." Br.at 21. This argument concerning "static content" is forfeited because McDonald did not raise it to the Board. Appx318-319; Appx346-349; *In re Google*, 980 F.3d at 863; *In re Watts*, 354 F.3d at 1368. It is also unpersuasive because Lim is not limited only to "static content," i.e., text/non-video, but instead teaches

that media content may come in various formats, including "plain text, recorded voice, live voice, graphics, *streaming video*, [and] *live streaming video*." Appx433, ¶ 99 (emphasis added). The Board thus rightly found that claim 29 would have been obvious over Lim and Carlson. Accordingly, substantial evidence supports the Board's findings that claims 21-32 would have been obvious over the prior art.

## V. CONCLUSION

For all of the foregoing reasons, this Court should affirm the Board's decision finding claims 21-32 patent ineligible. This Court should also affirm the Board's decision finding that claims 21-32 would have been obvious. If the Court affirms the Board's patent ineligibility decision, it need not reach the obviousness issue.

Respectfully submitted,

April 2, 2024

*/s/ Robert E. McBride*

FARHEENA Y. RASHEED
Acting Solicitor

AMY J. NELSON
Acting Deputy Solicitor

ROBERT E. MCBRIDE
KAKOLI CAPRIHAN
Associate Solicitors
U.S. Patent and Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313

*Attorneys for the Director of the United States Patent and Trademark Office*

## RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE

I certify pursuant to Fed. R. App. Proc. 32(a)(7) that the foregoing BRIEF FOR APPELLEE – DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE complies with the type-volume limitation required by the Court's rule. The total number of words in the foregoing brief, excluding the table of contents and the table of authorities, is 12,893 words as calculated using the Word® software program.

*/s/ Robert E. McBride*
Robert E. McBride
Associate Solicitor